NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILLIAM H. LEMON,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2022-2200

---

Petition for review of the Merit Systems Protection Board in No. PH-0842-22-0006-I-1.

---

Decided: December 11, 2023

---

WILLIAM H. LEMON, Lewes, DE, pro se.

MILES KARSON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

---

Before DYK, SCHALL, and REYNA, *Circuit Judges*.

PER CURIAM.

## DECISION

William H. Lemon petitions for review of the final decision of the Merit Systems Protection Board ("Board") that affirmed the decision of the Office of Personnel Management ("OPM") that Mr. Lemon was not eligible to receive annuity benefits under the Federal Employees' Retirement System ("FERS"). Suppl. App. 1.[1] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9). For the reasons set forth below, we *affirm*.

## DISCUSSION

### I

Mr. Lemon worked for the U.S. Postal Service from approximately December 7, 1985, until June 26, 1998. Suppl. App. 2. During this period he was covered by FERS. *Id.* at 40–41. FERS is outlined in Chapter 84 of Title 5 of the United States Code. In June of 2021, Mr. Lemon applied for a deferred or postponed annuity. *Id.* at 27–30 ("Deferred Annuity Application"). Former federal employees who were covered by FERS are eligible for a deferred annuity if they completed a certain number of years of service. *See* 5 U.S.C. § 8413. In his application, Mr. Lemon indicated that he had never previously filed an application under FERS for a refund, for retirement, for deposit, or for redeposit. Suppl. App. 28.

In a letter dated August 23, 2021, OPM informed Mr. Lemon that it had determined that he was not eligible to receive an annuity under FERS. *Id.* at 25. OPM stated that this was because it had determined that Mr. Lemon had filed an application for a refund of his FERS retirement deductions on January 2, 1999 ("Refund

---

[1] Our citations to "Suppl. App." refer to the Supplemental Appendix attached to Respondent's brief.

Application"), and that a refund of those deductions in the amount of $4,116.85 had been authorized on February 19, 1999. *Id.* OPM explained to Mr. Lemon, "[s]ince you have received a refund of your retirement deductions, you are not entitled to an annuity. The law that applies in your case is section 8424(a) of title 5, United States Code. It voids annuity rights that are based on refunded service." *Id.* OPM concluded by informing Mr. Lemon that this was its final decision in the matter. *Id.*

## II

Mr. Lemon timely appealed OPM's final decision to the Board. There, he claimed that he never sought a refund of his FERS retirement deductions, that he never received a refund check, and that his former wife had completed the Refund Application and forged his signature on it. Suppl. App. 4.

On January 18, 2022, a hearing was held before the administrative judge ("AJ") assigned to the case. *Id.* at 1. At the hearing, Mr. Lemon reiterated that he had not signed the Refund Application. *Id.* at 4–5. Rather, he testified that he believed that his former wife had completed the Refund Application, based on the names of the witnesses on the application, his former wife's access to the required information, and the fact that, as a federal employee, she was familiar with the refund application process. *Id.* at 5. Mr. Lemon also testified that he had completed the Deferred Annuity Application in June of 2021 and that it contained his handwriting and signature. *Id.* at 6. During the hearing, Mr. Lemon was asked to compare the handwriting and signatures on the Refund Application and the Deferred Annuity Application. He testified that he could tell that the handwriting and signatures on the Refund Application were not his because they were very neat. *Id.*

Following the hearing, on January 28, 2022, the AJ rendered her initial decision. The AJ stated that she believed Mr. Lemon "does not recall requesting a refund of

his retirement deductions over 20 years ago." *Id.* at 7. Nevertheless, she did not credit Mr. Lemon's testimony that he did not complete the Refund Application and that he never received a refund check. Regarding the issue of the Refund Application, the AJ stated:

> I have reviewed the signatures and handwriting on the Deferred Annuity Application and compared them with the signature and handwriting on the Refund Application. *See Boyling v. Department of the Army*, 6 M.S.P.R. 276, 278 (1981) (stating that a trier of fact may compare handwriting and draw conclusions therefrom in the presence or absence of expert opinion). Although the signature on the Refund Application is arguably "neater," the lettering style of the capital "W" is nearly identical to the two signatures on the Deferred Annuity Application. Additionally, the handwriting on both applications are substantially similar, particularly the "T"s, "R"s, "2"s, and "6"s. Notably, the "E"s on both applications are distinctive. Both applications contain "E"s that fluctuate between using a typical capital E and a curly, backwards 3 looking E. The handwritten "I"s on both applications appear to always be in lower case, unlike the rest of the letters. Further, the "X"s used to check the boxes on both applications have a distinctive vertical line that connects the top left of the "X" to the bottom left of the "X." Thus, the foregoing handwriting analysis supports the conclusion that the appellant applied for a refund of his retirement contributions.

Suppl. App. 7–8 (record citations omitted). The AJ also noted that Mr. Lemon's date of birth was incorrect on the Refund Application, but stated that this "appear[ed] to be a misprint" since Mr. Lemon's stated birthdate was the same as the date the application was signed. *Id.* at 8 n.7.

Next, the AJ pointed to Mr. Lemon's testimony that he completed a change of address form after he separated from his wife, so that his mail to his old address was forwarded to his new address. On this basis, the AJ determined that Mr. Lemon's former wife would not have had access to the refund check and that Mr. Lemon did in fact receive a refund check of his retirement contributions. *Id.* at 8. Finally noting OPM's "routine records" and Mr. Lemon's testimony, the AJ stated that Mr. Lemon had "not produced evidence to overcome OPM's evidence that he applied for and received a refund of his retirement contributions" and that he had not "met his burden to prove that his refund application was the result of fraud." *Id.* (citing *Manoharan v. Off. of Pers. Mgmt.*, 103 M.S.P.R. 159, ¶¶12–15 (2006); *Rint v. Off. of Pers. Mgmt.*, 48 M.S.P.R. 69, 72 (1991), *aff'd* 950 F.2d 731 (Fed. Cir. 1991)).

Having found that Mr. Lemon received a lump-sum payment of his retirement contributions, the AJ held that, under 5 U.S.C. § 8424(a), he was not entitled to receive a deferred annuity. She therefore affirmed OPM's decision. *Id.* at 8–9.

Mr. Lemon timely petitioned the Board for review of the AJ's initial decision. The Board denied the petition and affirmed the initial decision on August 19, 2022. *Id.* at 20. The AJ's initial decision therefore became the final decision of the Board. This appeal followed.

## III

Our review of the Board's decision is limited by statute. We must affirm a final decision of the Board unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984). Substantial evidence "means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Mr. Lemon's sole argument on appeal is that the AJ incorrectly decided the facts of his case. Thus, he repeats his claims that he never sought a refund of his FERS retirement deductions, that he never received a refund check, and that his former wife had completed the Refund Application and forged his signatures on it, as evidenced in part by the incorrect birthdate on the Refund Application. Pet'r's Informal Br. Attach. 1–3; Pet'r's Replacement Reply Br. 1–2; Pet'r's Mem. in Lieu of Arg. 2–4.

Substantial evidence clearly supports the decision of the Board. We have set forth this evidence above. As noted, the AJ carefully examined and compared the handwriting on the Refund Application and the Deferred Annuity Application and explained the discrepancy regarding Mr. Lemon's birthdate. In addition, she had before her the evidence of Mr. Lemon's change of address and the records of OPM. All of this led the AJ to find that Mr. Lemon had not overcome OPM's evidence that he had applied for a refund of his FERS retirement deductions, that he had received the refund, and that he had not been the victim of fraud. While Mr. Lemon vigorously disputes the AJ's findings of fact, we cannot say that those findings are not supported by such evidence "as a reasonable mind might accept as adequate to support a conclusion." We therefore see no error in the AJ's decision affirming OPM's denial of Mr. Lemon's application for a deferred annuity.

## CONCLUSION

For the foregoing reasons, we affirm the final decision of the Board.

## **AFFIRMED**

### COSTS

No costs.